**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CITY OF BOSTON, THE BOSTON PUBLIC HEALTH COMMISSION, THE BOSTON HOUSING AUTHORITY, )<br><br>Plaintiffs, )<br><br>v. )<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; INSYS THERAPEUTICS; CARDINAL HEALTH INC.; MALLINCKRODT LLC; MALLINCKRODT PLC; SPECGX LLC; MCKESSON CORPORATION; AMERISOURCEBERGEN DRUG CORPORATION; WALGREENS BOOTS ALLIANCE d/b/a WALGREEN CO d/b/a WALGREENS OF MASSACHUSETTS, LLC; DR. FATHALLAH MASHALI; NEW ENGLAND WELLNESS & PAIN MANAGEMENT, P.C. a/k/a NEW ENGLAND PAIN ASSOCIATES, P.C. OF MASSACHUSETTS AND RHODE ISLAND, a/k/a GREYSTONE PAIN MANAGEMENT, INC., a/k/a NEW ENGLAND PAIN INSTITUTE, P.C.; and JANE DOES 1 – 50, )<br><br>Defendants. ) | Civil Action No. _____<br>(Removal from: Superior Court Department, Commonwealth of Massachusetts) |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367,

Defendant AmerisourceBergen Drug Corporation ("ABDC") has removed the above-captioned

action from the Superior Court Department, Commonwealth of Massachusetts, to the United States District Court for the District of Massachusetts. As grounds for removal, ABDC states:

## I.   NATURE OF REMOVED ACTION

1.      On September 13, 2018, the City of Boston, the Boston Public Health Commission, and the Boston Housing Authority ("Plaintiffs") filed *City of Boston v. Purdue Pharma L.P., et al*., in the Superior Court Department, Commonwealth of Massachusetts.  The court transferred the action to the Business Litigation Session and assigned the case No. 1884CV02860BLS2.

2.      The Complaint asserts claims against three groups of Defendants.[1]

3.      The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Insys Therapeutics; Mallinckrodt LLC; Mallinckrodt plc; and SpecGx LLC (collectively, "Manufacturer Defendants").

4.      The second group of defendants consists of ABDC; Cardinal Health, Inc.; McKesson Corporation; and Walgreens Boots Alliance (collectively, "Distributor Defendants").

5.      The third group of defendants consists of Dr. Fathallah Mashali and "New England Wellness & Pain Management, P.C., a/k/a New England Pain Associates, P.C. of Massachusetts and Rhode Island, a/k/a Greystone Pain Management, Inc., a/k/a New England Pain Institute, P.C." (collectively, "Mashali Defendants").  Compl. ¶ 43.

---

[1] In addition to the three groups of Defendants, the Complaint also purports to state claims against unknown Defendants described as "JANE DOES 1 – 50."

6.     With respect to the Distributor Defendants, Plaintiffs complain of over-distribution of prescription opioids into Massachusetts and failures "to maintain effective controls, and to investigate, report, and take steps to terminate suspicious orders."  Compl. ¶ 1.

7.     The Complaint asserts five counts against ABDC and the other Distributor Defendants: public nuisance (Count I); violations of the provisions of Mass. Gen. Laws ch. 93A (Count II); negligence and negligent misrepresentation (Count III); fraud and fraudulent misrepresentation (Count IV); and unjust enrichment (Count V). *See* Compl. ¶¶ 358-436, Prayer for Relief.

8.     In support of its causes of action, Plaintiff alleges, among other things, that federal law requires the Distributor Defendants "to detect, report, and refuse to ship suspicious orders of opioids in order to prevent diversion of these dangerous drugs for non-medical purposes[,]" and, further, that the Distributor Defendants have allegedly "been cited and fined by the DEA [federal Drug Enforcement Administration] and/or DOJ [federal Department of Justice] for failing to maintain effective controls against diversions."  Compl. ¶ 43.  Plaintiff specifically alleges, among other things, that the Distributor Defendants have violated the duties governing reporting and shipping of "suspicious" opioid orders arising from the federal Controlled Substances Act ("CSA") and its implementing regulations.  *See* Compl. ¶¶ 9, 192-211, 213, 217-41, 261, 263, 265-70, 281-87, 364, 385-86, 400-06, 415.

9.     Because the duties governing reporting and shipping "suspicious" opioid orders arise from the CSA and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

10.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan

Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. More than 1,000 opioid-related actions are pending in the MDL, including more than 90 actions originally filed in this District.[2]

11.     ABDC intends to tag this case immediately for transfer to the MDL.

12.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on ABDC in the state court action are attached as **Exhibit A**.

## II.    TIMELINESS OF REMOVAL

13.     ABDC was served with the Complaint on September 21, 2018.

14.     ABDC has not responded to the Complaint in state or federal court.

15.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiffs' Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

16.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

---

[2] *See, e.g.*, JPML Dkt. No. 2060 (CTO-46) (transferring 6 cases from D. Mass. to MDL); JPML Dkt. No. 2025 (CTO-45) (transferring 17 cases from D. Mass. to MDL); JPML Dkt. No. 1894 (CTO-42) (transferring 11 cases from D. Mass. to MDL).

III.    **PROPRIETY OF VENUE**

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the venue where the state court action was pending prior to removal is a state court within this federal district and division.

IV.    **BASIS OF REMOVAL**

18.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*[3]

19.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

20.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002).

---

[3] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*" (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets and citations omitted).

21.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

22.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258; *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (federal jurisdiction is proper "where a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" (citation and alteration omitted)); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.").

23.     As set forth below, this case meets all four requirements.[4]

24.     Although Plaintiffs ostensibly plead some of their theories of recovery against ABDC as state law claims, they base the underlying theory of liability on ABDC's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that some of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that ABDC allegedly had a duty to identify, report, and then not ship.

25.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations, 21 C.F.R. § 1301.71(a), as the Complaint itself acknowledges. *See* Compl. ¶ 192; *id.* ¶ 193 ("Recognizing a need for greater scrutiny over controlled substances due to their potential for abuse and danger to public health and safety, the United States Congress enacted the Controlled Substances Act in 1970.  The CSA and its implementing regulations created a closed-system of distribution for all controlled substances and listed chemicals. . . ."); *id.* ¶ 194 ("The CSA requires manufacturers and distributors of Schedule II substances like opioids to[,]" among other things, "maintain effective controls against diversion . . . and [] design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the DEA."); *id.* ¶ 197 (quoting 21 C.F.R. § 1301.74(b)); *id.* ¶ 206 (quoting 21 C.F.R. §§ 1301.71(a), 1306.04(a)).

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiffs' underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

26.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration (again, "DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement").

27.     Plaintiffs' theories of liability against ABDC and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that ABDC and Distributor Defendants Cardinal and McKesson breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiffs' claims—to "halt" or refuse to ship such orders to Massachusetts pharmacies, and, similarly, that Walgreens violated alleged duties under the CSA to report and decline to fill "suspicious" orders.  *See* Compl. ¶¶ 192-211, 217-41, 261, 263, 265-70, 281-87, 364, 385-86, 400-06, 415.

28.     Specifically, Plaintiffs invoke federal law to support their claims and plead that ABDC and the other Distributor Defendants violated federal law with, among others, the following allegations:

   a.     "All registrants [under the CSA] – which includes all manufacturers and distributors of controlled substances – must adhere to the specific security, recordkeeping, monitoring and reporting requirements that are designed to

identify or prevent diversion.  When registrants at any level fail to fulfill their obligations, the necessary checks and balance collapse.  The result is the scourge of addiction that has occurred."  Compl. ¶ 193.

b.     "To ensure that even drugs produced within [DEA-assigned] quota are not diverted, Federal regulations issued under the CSA mandate that all registrants, manufacturers and distributors alike, 'design and operate a system to disclose to the registrant suspicious orders of controlled substances.'"  Compl. ¶ 197 (quoting 21 C.F.R. § 1301.74(b)).

c.     "Under the CSA, pharmacy registrants are required to 'provide effective controls and procedures to guard against theft and diversion of controlled substances.'"  Compl. ¶ 206 (quoting 21 C.F.R. § 1301.71(a)).

d.     "Defendants breached these duties by failing to: (a) control the supply chain; (b) prevent diversion; (c) report suspicious orders; and (d) halt shipments of opioids in quantities they knew or should have known could not be justified and were indicative of serious problems of overuse of opioids."  Compl. ¶ 213.

e.     "The DEA also repeatedly reminded the Defendants of their obligations under federal law, mirrored in and incorporated by Massachusetts law, to report and decline to fill suspicious orders . . . . The DEA has also briefed wholesalers regarding legal, regulatory, and due diligence responsibilities since 2006.  During these briefings, the DEA pointed out the red flags wholesale distributors should look for to identify potential diversion."  Compl. ¶ 217.

f.      "Distributor Defendants have faced repeated enforcement actions for their failure to comply with their obligations to report and decline suspicious orders, making clear both that they were repeatedly reminded of their duties, and that they frequently failed to meet them."  Compl. ¶ 220; *see also* Compl. ¶¶ 222-23, 281 (purporting to describe DEA enforcement actions against Distributor Defendants).

g.      "Through the above statements made on their behalf by their trade associations," in *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, "and other similar statements assuring their continued compliance with their legal obligations, Distributor Defendants not only acknowledged that they understood their obligations under the law, but they further affirmed that their conduct was in compliance with those obligations."  Compl. ¶ 286.

h.      "These public statements [by Distributor Defendants] created the false and misleading impression that the Distributor Defendants rigorously carried out their duty to report suspicious orders and exercise due diligence to prevent diversion of these dangerous drugs, and also worked voluntarily to prevent diversion as a matter of corporate responsibility to the communities their business practices would necessarily impact."  Compl. ¶ 287.

i.       "By failing to maintain a closed system that guards against diversion of dangerously addictive drugs for illicit purposes and by failing to report suspicious orders of opioids, . . . Distributor Defendants injuriously

affected public rights . . . ."  Compl. ¶ 364.

j.    "[E]ach . . . Distributor Defendant engaged in unfair and/or deceptive trade practices by failing to report suspicious orders of opioids and/or prevent the diversion of highly addictive prescription drugs to illegal sources."  Compl. ¶ 385.

k.    "Distributor Defendants breached their duties to exercise due care in the business of wholesale distribution of dangerous opioids, which are Schedule II Controlled Substances, by failing to monitor for, failing to report, and filing highly suspicious orders time and again.  Because the purposes of these duties was to prevent the resulting harm – misuse and/or diversion of highly addictive drugs for non-medical purposes – the causal connection between Defendants' breach of duties and the ensuing harm was entirely foreseeable."  Compl. ¶ 400.

29.    Although Plaintiffs allege that Massachusetts law incorporates federal regulations promulgated under the CSA, *see* Compl. ¶ 192, Plaintiffs fail to cite any specific provision of state law that imposes a requirement that wholesale pharmaceutical distributors or pharmacies identify and report suspicious orders of controlled substances to a Massachusetts government official or entity, or a state law source for a requirement that wholesale pharmaceutical distributors halt suspicious orders of controlled substances from registered pharmacies. To the contrary, the Massachusetts laws that Plaintiffs cite—specifically,  Mass. Gen. Laws Ann. ch. 94C §§ 7(a), 12(a)(1) and (2)—require only that wholesale distributors and pharmacies comply with federal laws and regulations governing the distribution of controlled substances.  *See* Compl. ¶¶ 192, 199, 206.

30.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

31.     ***First***, Plaintiffs' state law claims "necessarily raise" a federal question because "resolution of the dispute requires interpretation of a . . . federal issue." *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 919 n.4 (11th Cir. 2012); *see also Rhode Island Fishermen's All.*, 585 F.3d at 49 (federal issue necessarily raised where "the[ ] asserted right to relief under state law requires resolution of a federal question"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

32.     As pled, Plaintiffs' claims against ABDC and the other Distributor Defendants require Plaintiffs to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Massachusetts.

33.     For example, in pleading negligence and negligent misrepresentation, Plaintiffs allege that "Distributor Defendants misrepresented their compliance with their duties under the law and concealed their noncompliance and shipments of suspicious orders of opioids to Boston and destinations from which they knew opioids were likely to be diverted into Boston . . . ." Compl. ¶ 401 (Count III).

34.     As noted, however, the alleged duty to prevent or halt shipments of suspicious orders arises *solely* under the federal CSA, and *not* under state law. "Thus, it is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the circumstances. *Rhode Island Fishermen's All.*, 585 F.3d at 49. "That is enough to make out a federal question." *Id.*

35.     While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here allege violations of federal law as the basis for its state-law claims.[5] Again, although Plaintiffs refer in passing to "Massachusetts state law" that they claim gives rise to the same duties, *see* Compl. ¶¶ 199-200, the specific provisions of

---

[5] Furthermore, it is not necessary for federal jurisdiction that ABDC establish that all of Plaintiffs' counts against it raise a federal question. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against ABDC and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.* 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

Massachusetts law that they cite do not give rise to an independent duty for wholesale distributors of controlled substances to report or refuse to fill suspicious orders for prescription opioids. Tellingly, Plaintiffs extensively cite federal laws and regulations and DEA decisions that establish a duty to report suspicious orders and prevent opioid diversion. *See, e.g.*, Compl. ¶¶ 192-98, 206-09, 222.

36.     In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA.

37.     ***Second***, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiffs plead them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

38.     ***Third***, the federal issue presented by Plaintiffs' claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.'" (quoting *Gunn*, 568 U.S. at 260)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

39.     Plaintiffs' theories of Distributor Defendants' liability necessarily require that a court determine the scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. *See, e.g.*, Compl. ¶ 193 ("Recognizing a need for greater scrutiny over controlled substances due to their potential for abuse and danger to public health and safety, the United States Congress enacted the Controlled Substances Act in 1970.  The CSA and its implementing regulations created a closed-system of distribution for all controlled substances and listed chemicals.").  Indeed, "Congress specifically designed the closed chain of distribution to prevent the diversion of legally produced controlled substances into the illicit market[,]" *id.*, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

40.     Plaintiffs' theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

41.     Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of

precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

42.     The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016).

43.     Removal is particularly appropriate here because Plaintiffs' action is but one of more than 1,000 similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) ("[A] question that will control many other cases is more likely to be a substantial federal question."). The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[6]

44.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

45.     In summary, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18

---

[6] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

(state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

46.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Distributor Defendants, Manufacturer Defendants, and Mashali Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

47.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

48.     The following Defendants have been served with the Complaint and consent to removal as indicated by their counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Insys Therapeutics; Mallinckrodt

LLC; SpecGx LLC; Walgreens Boots Alliance; McKesson Corporation; and Cardinal Health, Inc.

49.     Although the following Defendant has not been properly served, and thus its consent to removal is not required, the Defendant nonetheless consent to removal: Mallinckrodt plc.[7]

50.     Upon information and belief, the Mashali Defendants have not been served, and thus their consent to removal is not required.  In its caption, the Complaint states that the Mashali Defendants are "c/o David W. Krumsiek," an attorney at the law firm of Perry Krumsiek, LLP, who reports that he does not represent the Mashali Defendants.  Dr. Mashali is presently incarcerated at Devens Federal Medical Center, a federal prison located in Ayer, Massachusetts, and cannot be contacted by telephone or electronic mail.  Further, according to a search of the online database of the Corporations Division of the Secretary of the Commonwealth of Massachusetts, New England Wellness & Pain Management, P.C., has been dissolved by court order or an order of the Secretary of the Commonwealth, as has New England Pain Associates, P.C., formerly known as New England Pain Institute, P.C.[8]

51.     Even if the Mashali Defendants had been properly served, their consent to removal still would not be required because they are nominal parties.  *See Ryan v. State Bd. of Elections of State of Ill.*, 661 F.2d 1130, 1133–34 (7th Cir. 1981) (joinder of nominal defendant in removal petition unnecessary) (citations omitted); *cf. Bailen v. Deitrick*, 84 F.2d

---

[7] Mallinckrodt plc, an Irish public limited company, disputes that it has been served, but consents to this notice out of an abundance of caution and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[8] It appears that Plaintiffs have identified Greystone Pain Management, Inc. not as a standalone Defendant, but as an alias of New England Wellness & Pain Management, P.C., which, as noted above, has been dissolved.

375, 375–76 (1st Cir. 1936) ("It is the established rule that, where a suit brought in a state court against several defendants is subject to removal and its removal is applied for, all the defendants *who are necessary and not merely nominal parties* must be joined in the removal proceedings.") (emphasis added).    Because Plaintiffs seek relief almost exclusively from Distributor Defendants and Manufacturer Defendants based on their alleged conduct (and because New England Wellness & Pain Management, P.C. and New England Pain Associates, P.C., formerly known as New England Pain Institute, P.C. have been dissolved), the judgment-proof Mashali Defendants have no real and substantial stake in the litigation and are not real parties in interest.  *See Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325, 327 (5th Cir. 1970) ("The ultimate test of whether the . . . defendants are . . . indispensable parties . . . is whether in the absence of the (defendant), the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." (quotation marks omitted)); *Broyles v. Bayless,* 878 F.2d 1400, 1403 (11th Cir. 1989) ("[A] real party in interest is a party that has a real and substantial stake in the litigation and who exercises substantial control over the litigation.").

52.    Regarding the unidentified Defendants, Jane Does 1 – 50, "the general rule that all defendants must join in a notice of removal may be disregarded where, as here, the non-joining defendants are unknown."  *Green v. America Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003) (citation omitted); *see e.g.*, *Parks v. Town of Leicester*, Civ. No. 10–30120–FDS, 2012 WL 2088926, *3 (D. Mass. June 7, 2012) (action involving multiple defendants including unknown "John Doe," removed on original jurisdiction grounds).

53.     By filing this Notice of Removal, ABDC and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.

54.     If any question arises as to propriety of removal to this Court, ABDC requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

55.     Pursuant to 28 U.S.C. § 1446(d), ABDC will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs.

56.     ABDC reserves the right to amend or supplement this Notice.

**WHEREFORE**, ABDC removes this action, pending in the Superior Court Department, Commonwealth of Massachusetts, Case No. 1884CV02860BLS2, to this Court.


Dated: October 18, 2018                     */s/ Joshua D. Dunlap*
                                            Joshua D. Dunlap (BBO # 672312)
                                            PIERCE ATWOOD LLP
                                            254 Commercial Street
                                            Portland, ME 04101
                                            Tel.: (207) 791-1100
                                            Fax: (207) 791-1350
                                            jdunlap@pierceatwood.com

                                            *Counsel for AmerisourceBergen Drug*
                                            *Corporation*

## CONSENTS TO REMOVAL

/s/ Timothy C. Blank
Timothy C. Blank (BBO # 548670)
Jon Olsson (BBO # 698783)
DECHERT LLP
One International Place
100 Oliver Street, 40th Floor
Boston, MA 02110
(617) 728-7100
timothy.blank@dechert.com
jon.olsson@dechert.com

Sheila L. Birnbaum*
Mark S. Cheffo*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
Shiela.Birnbaum@dechert.com
Mark.Cheffo@dechert.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company Inc.*

*/s/ Jeff Goldman*
Jeff Goldman, Bar No. (660870)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1776
Telephone: 617.341.7700
jeff.goldman@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
steven.reed@morganlewis.com

Stacey Anne Mahoney*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: 212.309.6000
stacey.mahoney@morganlewis.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Teva Pharmaceuticals USA, Inc. and Cephalon, Inc.*

/s/ Charles C. Lifland
Charles C. Lifland\*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone:  (213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Gwyn Williams
Gwyn Williams
Allison Lukas Turner
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 880-4500
gwyn.williams@lw.com
allison.turner@lw.com

*Counsel for Endo Pharmaceuticals Inc. and Endo Health Solutions Inc.*

/s/ *Deborah E. Barnard*
Deborah E. Barnard (BBO#550654)
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA 02116
(617) 523-2700
deborah.barnard@hklaw.com

J. Matthew Donohue*
Joseph L. Franco*
Heidi A. Nadel (BBO#641617)
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
(503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Insys Therapeutics, Inc.*


/s/ *Alison M. Newman*
Alison M. Newman (BBO # 693953)
WILLIAMS & CONNOLLY, LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:  (202) 434-5354
anewman@wc.com

*Counsel for Cardinal Health Inc.*

*/s/ Brien T. O'Connor*
Brien T. O'Connor (BBO #546767)
Andrew J. O'Connor (BBO #672960)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Counsel for Mallinckrodt LLC, Mallinckrodt plc, and SpecGx LCC*

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart (BBO #547499)
COVINGTON & BURLING LLP
OneCity Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000
ghobart@cov.com

*Counsel for McKesson Corporation*

*/s/ Ronald W. Dunbar, Jr.*
Ronald W. Dunbar, Jr. (BBO #567023)
Dunbar Goloboy LLP
197 Portland Street, 5th Floor
Boston, MA 02114
617.244.3550
dunbar@dunbarlawpc.com

Kaspar Stoffelmayr*
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard St., Ste. 300
Chicago, Illinois 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Walgreens Boots Alliance, Inc.*

## Certificate of Service

I hereby certify that on October 18, 2018, a copy of the foregoing *Notice of Removal*, with exhibit, was served via e-mail and by United States First Class Mail, postage prepaid, on counsel of record as follows:

Eugene L. O'Flaherty (BBO # 567653)
Corporation Counsel
City of Boston Law Department
1 City Hall Sq., Room 615
City Hall
Boston, MA 02201
Tel.: (617) 635-4034
Eugene.oflaherty@boston.gov

Timothy J. Harrington (BBO # 652549)
General Counsel
Boston Public Health Commission
Boston Emergency Medical Services
1010 Massachusetts Ave, 6th Fl
Boston, MA 02118
Tel.: (617) 534-3422
tharrington@bphc.org

Robert J. McConnell (BBO # 550625)
Kate E. Menard (BBO #682087)
MOTLEY RICE LLC
55 Cedar Street
Suite 100
Providence, RI 02903
Tel.: (401) 457-7700
bmcconell@motleyrice.com
kmenard@motleyrice.com

Donald A. Migliori (BBO # 567562)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel.: (843) 216-9241
dmigliori@motleyrice.com

Linda Singer
Elizabeth Smith
Sara Aguiniga
*Pro Hac Vice* to be submitted
MOTLEY RICE LLC
401 9th Street, NW
Suite 1001
Washington, DC 20004
Tel.: (202) 386-9629
lsinger@motleyrice.com
esmith@motleyrice.com
saguiniga@motleyrice.com

Robert T. Naumes, Sr. (BBO # 367660)
Christopher C. Naumes (BBO # 671701)
NAUMES LAW GROUP, LLC
2 Center Plaza
Suite 620
Boston MA 02108
Tel.: (617) 227-8444
robert@naumeslaw.com
christpher@naumeslaw.com

*/s/ Joshua D. Dunlap*
Joshua D. Dunlap (BBO # 672312)