## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE CITY OF BOSTON, THE BOSTON
PUBLIC HEALTH COMMISSION, THE
BOSTON HOUSING AUTHORITY.
Plaintiffs,

        v.                            Civil Action No. 1:18-CV-12174-LTS

PURDUE PHARMA L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901

PURDUE PHARMA, INC.
One Stamford Forum
201 Tresser Boulevard          **MEMORANDUM IN SUPPORT OF**
Stamford, CT 06901             **MOTION FOR REMAND**

THE        PURDUE        FREDERICK
COMPANY INC.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901

TEVA    PHARMACEUTICALS    USA,
INC.
190 Horsham Road
North Wales, PA 19454

CEPHALON, INC.
41 Moores Road
Frazer, PA 19355

JOHNSON & JOHNSON
CT Corporation System
101 Federal Street
Boston, MA 02110

JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN
PHARMACEUTICALS,      INC.   n/k/a
JANSSEN PHARMACEUTICALS, INC.;
JANSSEN   PHARMACEUTICA,    INC.
n/k/a JANSSEN PHARMACEUTICALS,

INC.
c/o CT Corporation System
600 N 2nd Street, Suite 401
Harrisburg, Pennsylvania 17101-1071

ENDO HEALTH SOLUTIONS INC.
c/o CT Corporation System
155 Federal Street Suite 700
Boston, MA 02110

ENDO PHARMACEUTICALS, INC.
c/o CT Corporation System
155 Federal Street Suite 700
Boston, MA 02110

INSYS THERAPEUTICS
133 S Spectrum Blvd #100
Chandler, AZ 85286

CARDINAL HEALTH INC.
c/o CT Corporation System
155 Federal Street Suite 700
Boston, MA 02110

MALLINCKRODT LLC
c/o CT Corporation System
155 Federal Street Suite 700
Boston, MA 02110

MALLINCKRODT PLC
675 McDonnell Blvd.
St. Louis, MO 63042

SPECGX LLC
385 Marshall Avenue
Webster Groves, MO
63119

MCKESSON CORPORATION
c/o Corporation Service Company
84 State St.
Boston, MA 02109

AMERISOURCEBERGEN DRUG
CORPORATION
c/o CT Corporation System

c/o CT Corporation System
155 Federal Street Suite 700
Boston, MA 02110

WALGREENS BOOTS ALLIANCE
d/b/a WALGREEN CO
d/b/a Walgreens of Massachusetts, LLC
c/o Corporation Service Company
84 State Street
Boston, MA 02109

Dr. Fathallah Mashali
NEW ENGLAND WELLNESS & PAIN
MANAGEMENT, P.C., a/k/a NEW
ENGLAND PAIN ASSOCIATES, P.C.
OF MASSACHUSETTS AND RHODE
ISLAND, a/k/a GREYSTONE PAIN
MANAGEMENT, INC., a/k/a NEW
ENGLAND PAIN INSTITUTE, P.C.
160 Dedham St.
Dover, MA 02030
c/o David W. Krumsiek
101 Arch St.
Boston, MA 02110

AND

JANE DOES 1 – 50

Defendants.

The City of Boston, Massachusetts, the Boston Public Health Commission, and the Boston Housing Authority respectfully submit this Memorandum in Support of Motion to Remand.  For the reasons set forth below, this Court lacks subject matter jurisdiction over this action, and Plaintiffs request that this Court remand this matter back to the Superior Court of Suffolk County.

## INTRODUCTION

On September 13, 2018, the City of Boston, the Boston Public Health Commission, and the Boston Housing Authority ("Plaintiffs") sued Defendant opioid manufacturers, distributors, and a local pill mill provider in the Suffolk County Superior Court.  That is where this action

belongs.  The Complaint asserts claims based *exclusively* on Massachusetts statutory and common law: Massachusetts General Laws Chapter 93A, negligence and negligent misrepresentation, fraud and fraudulent misrepresentation, public nuisance, and unjust enrichment.  *See* Compl. ¶¶358-436.

Defendant AmerisourceBergen Drug Corporation ("AmerisourceBergen") removed this case to federal court on October 18, 2018.  Notwithstanding the absence of a federal claim, as all of the Plaintiff's claims are either Massachusetts statutory or common law claims, AmerisourceBergen purports to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331.  In doing so, it mischaracterizes the Plaintiffs' claims, while still effectively conceding the absence of any basis for federal jurisdiction.  Courts have consistently rejected arguments that state law claims based on conduct that violates the federal Controlled Substances Act ("CSA" or "FCSA"), 21 U.S.C. § 801 *et seq.* provide a basis for federal jurisdiction.  AmerisourceBergen or other distributor defendants have filed the identical removal notice in at least seven different courts, in eight separate actions by state and local governments, which have rejected the same arguments AmerisourceBergen makes here.  *See* Order, *County of Anderson v. Rite Aid of South Carolina, Inc.*, No. 8:18-cv-01947 (D.S.C. Aug. 20, 2018) (Attached as Ex. A); Memorandum Decision and Order Granting Motion to Remand, *Weber County, Utah v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00089, Doc. 19 (D. Utah Aug. 7, 2018) (Attached as Ex. B); Memorandum Decision and Order Granting Motion to Remand, *Uintah County, Utah et al. v. Purdue Pharma L.P. et al.*, No. 1:18-cv-00089, Doc. 20 (D. Utah Aug. 7, 2018) (Attached as Ex. C); Memorandum Opinion and Order, *City of Granite City, IL v. AmerisourceBergen Drug Corporation et al.*, No. 3:18-cv-1367, Doc. 16 (S.D. Ill. July 13, 2017) (Attached as Ex. D); *New Mexico, ex rel. Balderas, Attorney General, v. Purdue Pharma L.P.,* Case No. 1:18-cv-00386-JCH-KBM, 2018 WL 2943246 (D.N.M. June 12, 2018); *Delaware, ex rel. Denn, Attorney General of Delaware v.*

*Purdue Pharma L.P., et al.*, 1:18–383–RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018); Memorandum Opinion and Order, *State of West Virginia, et al. v. McKesson Corp.*, No. 2:17-cv-03555, Doc. 21 (Feb. 15, 2018); *State of West Virginia ex rel. Morrisey v. McKesson Corp.*, No. CV 16-1772, 2017 WL 357307 (S.D. W. Va. Jan. 24, 2017).

These decisions, in similar cases brought by states and local governments against manufacturers and distributors of prescription opioids alleging the same facts and similar state and common law claims, reject precisely the arguments for federal jurisdiction raised here. In fact, it is notable that, in *every* decided case in which plaintiffs have sought remand in the opioid litigation, courts have rejected federal jurisdiction, recognizing that these cases belong in state court.

Moreover, AmerisourceBergen's motive for its serial attempts at removal is transparent: delay. Its Notice cites the pendency of *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP) (N.D. Ohio) (the "MDL"), as a basis for removal. Federal courts are courts of limited jurisdiction, however, and AmerisourceBergen's desire to delay the case by transfer to the MDL is not a means to manufacture federal jurisdiction where none exists. Tellingly, AmerisourceBergen's fellow distributor and fellow defendant in this case, McKesson Corporation, ("McKesson") avoided a decision on the same jurisdictional arguments in the MDL when it had the opportunity to set MDL-wide precedent. Previously, McKesson removed an action by the State of Kentucky to federal court, asserting the same arguments AmerisourceBergen makes here. *Compare* Notice of Removal, *Commonwealth of Kentucky, ex rel. Andy Beshear Attorney General v. McKesson Corporation*, 3:18-cv-00010 (E.D. Ky. Feb. 2, 2018). (Attached as Ex. F). After remand briefing ensued, the case was transferred to the MDL. The MDL Court, which has otherwise stayed any remand filings, was ready to determine Kentucky's remand motion as one of two pending cases slated for decision in an Order Regarding Remand Briefing, *In re: National*

*Prescription Opiate Litig.*, Case No. 1:17-MD-2804, Doc. 677 (N.D. Ohio). McKesson submitted a Notice of Consent to Remand before a decision could issue.  *See* MDL Doc. 736 (Attached as Ex. G).

As explained below, AmerisourceBergen's jurisdictional argument fails for at least three reasons. First, under the well-pleaded complaint rule, to confer subject matter jurisdiction a federal question must be raised by plaintiff's complaint.  The Plaintiffs' Complaint does not assert a federal question.  Second, there must be a substantial, disputed, and necessary question of federal law warranting federal jurisdiction.  *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005).  Courts have consistently rejected arguments that state law claims based on conduct that violates the federal CSA provide a basis for federal jurisdiction.  *See e.g. Denn,* 2018 WL 1942363, at *4; *Balderas*, 2018 WL 2943246, at *6; Memorandum Opinion and Order, *State of West Virginia, et al.*, No. 2:17-cv-03555, Doc. 21 at 13-14 (Ex. E); *see also State of W. Virginia ex rel. Morrisey v. McKesson Corp.*, No. CV 16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017).  Such allegations are "insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986).  Here, AmerisourceBergen has failed to carry its burden to identify any question of federal law actually in dispute, much less "necessarily raised" in this case.  Finally, allowing removal of state law claims such as this, which are routinely tried in state court, would upset the state-federal jurisdictional balance.   Despite the fact that many cases are consolidated in the MDL, plaintiffs are masters of their own complaints, and litigation against opioid distributors and/or manufacturers, similar to this case, is also pending in state courts across the country.

Plaintiffs, who continue to deal with the effects of the opioid epidemic, *see* Compl. ¶¶ 308-351, seek expedited consideration of this motion.  The urgent public health crisis they face is too

important to wait.  They therefore respectfully request that AmerisourceBergen's gamesmanship not be rewarded, and this case promptly be remanded to state court where it belongs.

## ARGUMENT

### I.     Legal Standard

It is axiomatic that the federal courts are "courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 552 (2005) (internal quotation omitted).  "Federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112 – 113 (1936); *Denn,* 2018 WL 1942363, at *2; *see also Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.,* 585 F.3d 42, 48 (1st Cir. 2009) ("the rule requires the federal question to be stated on the face of the plaintiff's well-pleaded complaint.").  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant" based on federal question jurisdiction. *Gully, 299 U.S. 112-113; Denn,* 2018 WL 1942363 at *1.  "If the case could not have been filed in federal court, then removal under § 1441 is improper and remand is appropriate."  *Id.*

Courts are obliged to strictly construe removal jurisdiction, resolving all doubts in favor of remand.  *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941); Opinion and Order, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804, Doc. 899 (N.D. Ohio Aug. 23, 2018);  *Coren by Jefferson v. Cardoza*, 139 F.R.D. 561, 565 (D. Mass. 1991).  The burden of establishing federal jurisdiction falls to the party invoking the removal statute. *See, e.g.,Amoche v. Guarantee Tr. Life Ins. Co.,* 556 F.3d 41, 48 (1st Cir. 2009).

### II.    Under the "Well-Pleaded Complaint" Rule, the Plaintiffs' Claims Against Defendants Do Not "Arise Under" Federal Law.

Under long-settled precedent, federal question jurisdiction can only exist where a significant question of federal law is raised by plaintiffs' causes of action; a federal question raised by an anticipated defense is not sufficient to confer jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987) (internal citations omitted); *see also, e.g., Alexander v. Jefferson*, No. 1:11 CV 2807, 2012 WL 70330, at \*2 (N.D. Ohio Jan. 4, 2012). Here, there is no federal jurisdiction because the Plaintiffs rely exclusively on state law for their claims, as all of the Plaintiffs' causes of action are either Massachusetts statutory or common law claims, and none of the claims are federal claims. Violations of federal law are not an essential element of any of the causes of action. *See Gully,* 299 U.S. at 112 (to confer "arising-under" jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

### III.   The Presence of a Claimed Violation of the CSA in a State Law Claim Does Not Confer Federal Jurisdiction.

AmerisourceBergen's jurisdictional theory is flatly inconsistent with the Supreme Court's ruling in *Merrell Dow Pharma. Inc. v. Thompson*, 478 U.S. 804 (1986). In *Merrell Dow*, plaintiffs brought state common law causes of action against the manufacturer of Bendectin. Plaintiffs alleged, *inter alia*, that Merrell Dow's violation of the misbranding provisions of the federal Food, Drug, and Cosmetic Act ("FDCA") gave rise to a rebuttable presumption of negligence under state law. The Supreme Court nevertheless found no basis for federal question jurisdiction. Central to the Supreme Court's conclusion was the recognition that Congress had not created a private federal remedy for violations of the FDCA. *Id.* at 814 ("We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question

8

jurisdiction.").  As the Supreme Court subsequently explained, the decision in *Merrell Dow* was also motivated by a concern that recognition of federal question jurisdiction under these circumstances would disturb the balance of federal and state judicial responsibilities approved by Congress.  *See Grable*, 545 U.S. at 318 (explaining that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.").

In another opioid case, similar to the instant case, that McKesson unsuccessfully attempted to remove, the Southern District of West Virginia found that the absence of a private cause of action under the CSA weighed heavily in favor of remanding the case.  *See* Memorandum Opinion and Order, *State of West Virginia, et al.*, No. 2:17-cv-03555, Doc. 21.  Similarly, the *Balderas* court explained in remanding the New Mexico opioid action: "Plaintiff's Complaint does not allege a federal cause of action under the FCSA—nor could it have because the FCSA provides no federal cause of action."  2018 WL 2943246, at *4.  Here, too, the Plaintiffs assert only causes of action arising under Massachusetts statutory and common law, and did not—and could not—assert a claim under the CSA.

### IV.    This Case Does Not "Necessarily Raise" a "Substantial" Federal Question Sufficient to Confer Federal Jurisdiction Under *Grable*.

Apparently recognizing that it cannot establish federal "arising under" jurisdiction under the well-pleaded complaint rule, AmerisourceBergen seeks to invoke the narrow exception recognized by the Supreme Court in *Grable* for those "infrequent" situations where "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312; *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (characterizing cases in which federal jurisdiction may be found under *Grable* as a "slim category").

In order to establish federal jurisdiction under *Grable*, the federal issue implicated in state-law litigation must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). AmerisourceBergen cannot meet these requirements.

As explained above, three separate federal courts have rejected arguments, in opioid actions brought by states, that federal jurisdiction existed under the four-part *Grable* test in addressing the same arguments by distributor defendants in opioid cases.  Each ruled that the distributor's argument failed three distinct prongs of that test (although one would have been sufficient), finding that the federal issue identified by the distributor defendant was neither "necessarily raised," nor "substantial," nor could it be resolved in federal court "without disrupting the federal-state balance approved by Congress." *See Denn,* 2018 WL 1942363, at *2-5; *Balderas*, 2018 WL 2943246, at *5-6; Memorandum Opinion and Order, *State of West Virginia, et al.,* No. 2:17-cv-03555, Doc. 21 at 3.  Moreover, district courts in Utah, South Carolina, and Illinois have remanded actions by counties and a city, finding that the *Grable* exception did not apply to the plaintiffs' claims.  *See* Exhibits A – D.  The same analysis yields the same result here.

### A.     Failure to Identify Any Federal Issue "Necessarily Raised"

To begin with, the federal issue AmerisourceBergen purports to identify is not "necessarily raised" in this case because resolution of the issue is not necessary or essential to the resolution of the Plaintiffs' claims.  *See Padro v. Int'l Inst. of Americas, 597* F. Supp. 241, 242 (D.P.R. 1984) (remanding Plaintiff's complaint because it did not rest on any federal question, or mention federal law); *Berger v. Morgan*, No. CIV.A. 14-12164-GAO, 2014 WL 7375495, at *1 (D. Mass. Dec. 29, 2014) (finding no federal question because allegations did not raise a federal issue").

Here, no federal issues are "necessarily raised" because Plaintiffs can prove their case simply by proving the elements of their state law causes of action, as well as AmerisourceBergen's violations of its duties under state law. AmerisourceBergen concedes as much. *See* Notice of Removal ¶ 24 (asserting that some of the plaintiffs' claims are state law claims.) This alone requires remand.

Further, the Plaintiffs' complaint cites multiple state statutory and common-law duties as a basis for each claim. To the extent that the paragraphs AmerisourceBergen cites reference CSA violations, the complaint also makes clear that Massachusetts law and the Massachusetts Controlled Substances Act require AmerisourceBergen to, among other things, report and halt suspicious orders and maintain effective controls against diversion. *See, e.g.,* Notice of Removal ¶ 33-34 (citing Compl. ¶ 401). Although ignored by AmerisourceBergen, numerous allegations throughout the Complaint make clear that each claim is not only predicated on state law, but that to the extent a statutory standard is referenced, it could be established based on violations of state-law duties. *See, e.g.*, Compl. ¶¶ 17, 192, 199, 200.

AmerisourceBergen also ignores that the Complaint includes detailed allegations regarding Massachusetts state-law requirements without reference to any particular federal law or regulation. *See, e.g.* Compl. ¶ 190 ("First, under the common law, the Defendants had a duty to exercise reasonable care in delivering dangerous narcotic substances."); *id.* ¶ 191 ("Second, each Defendant assumed a duty, when speaking publically about opioids and their efforts and commitment regarding diversion of prescription opioids, to speak accurately and truthfully."); *id.* ¶ 199 ("The Massachusetts Controlled Substances Act requires an applicant's registration to be 'consistent with the public interest,' which includes the applicant's 'maintenance of effective controls against

diversion of controlled substances into other than legitimate medical, scientific, or industrial channels,' and 'compliance with applicable federal, state, and local law.'").

AmerisourceBergen misleadingly claims that these state-law duties merely incorporate federal requirements, citing one of multiple statutes and regulations referenced in the complaint. On its face, however, the Complaint alleges independent state-law duties (including common law duties independent of controlled substances statutes or regulations).  Moreover, even state laws that simply parallel or integrate federal standards or statutes do not justify federal jurisdiction.  *See Balderas*, 2018 WL 2943246, at *2 (finding this prong of the *Grable* analysis unsatisfied in an opioid case in which the state of New Mexico alleged that state law "parallel[ed]" federal requirements and described certain state-law duties that incorporated federal standards or required compliance with both federal and state law).

In addition, AmerisourceBergen's Notice of Removal is misleading in important respects. For example, it ignores the context of allegations referencing the CSA.  The complaint explains, among other things, that "[t]he statutes and regulations reflect a standard of conduct and care below which reasonably prudent distributors would not fall."  *Id.* ¶203.  Further, certain of the allegations AmerisourceBergen cite fall under the subheading stating "Despite Repeated Admonitions, Defendants Have Repeatedly Violated their Obligations," describing the repeated enforcement actions Defendants have faced, and cites paragraphs alleging that McKesson and other distributors entered into settlement agreements in which they publically admitted they violated federal law. *See* Notice of Removal ¶ 28f (citing Compl. ¶¶222-223).  Nothing about this background raises a federal question.  *See Balderas*, 2018 WL 2943246 at *8 (discussing similar allegations that the

DEA "reminded and warned [AmerisourceBergen and other distributors] of their statutory duties").[1]

Under parallel circumstances in other opioid litigation, courts uniformly have found that the issue of whether the distributor defendants violated their obligations under the federal CSA was not "necessarily raised."  In *Denn*, the Delaware court reasoned:

> Although a determination of whether Defendants violated the FCSA may occur while addressing Plaintiff's claims, there is also the possibility that the claims will be resolved without resolution of the federal issue at all. Based on the complaint, it is possible for the state law claims to be resolved solely under state law. Although the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law.

2018 WL 1942363, at *2 (citation omitted).  In particular, the Delaware court concluded that the State could prevail on its Delaware Consumer Fraud Act claim based on alleged misrepresentations "unrelated to federal law," on its public nuisance claim "by showing Defendants violated the Delaware Controlled Substances Act," and on its negligence claim by showing conduct that fell below standards of care that did not reference federal law.  *Id.* at *3.

The New Mexico court engaged in an identical analysis:

> [C]ontrary to McKesson's claim that Plaintiff can prevail only by showing that Defendants violated the FCSA, it appears that Plaintiff could show that Defendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the federal statute is not necessarily raised. While a determination of a duty and violation of that duty under the FCSA will likely occur in examining Plaintiff's claims, so also will examination of New Mexico common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels. . . . New Mexico state law provides alternate theories for a finding of liability against

---

[1] If anything, these excerpts from the Complaint undermine AmerisourceBergen's argument.  The Complaint alleges that AmerisourceBergen claimed it would conform its conduct to the DEA guidance described and that AmerisourceBergen misled the public with a public relations campaign claiming it was fully cooperating with law enforcement and actively working to prevent diversion.  *See, e.g.*, Compl. ¶¶ 282, 284-287.  Whether AmerisourceBergen is liable for this deceptive and misleading conduct is purely a state law question.

McKesson and its codefendants because the Complaint implicates numerous alleged duties under state law. Thus, as in *Merrell Dow*, the Complaint refers to the FCSA, its regulations, and the DEA letters as "available criter[ia] for determining whether" Defendants are liable, but their liability, if any, does not hinge *exclusively* on federal law, as McKesson argues.

2018 WL 2943246, at *6 (citation omitted).

Likewise, the Southern District of West Virginia has twice found that no federal issue was necessarily raised in an action against opioid distributors.  *See* Memorandum Opinion and Order, *State of West Virginia, et al. v. McKesson Corp.*, No. 2:17-cv-03555, Doc. 21 at 12 (Feb. 15, 2018) ("The earlier remand decision focused extensively on whether the alleged federal issue was necessarily raised and Judge Copenhaver rightly concluded that it was not."); *State of West Virginia ex rel. Morrisey v. McKesson Corp.*, No. CV 16-1772, 2017 WL 357307, at *4–8 (S.D.W. Va. Jan. 24, 2017).  *Accord* Order, *State of Oklahoma ex rel., Mike Hunter, Attorney General of Oklahoma v. Purdue Pharma L.P. et al.*, No. 5:18-cv-00574, Doc. 53 (W.D. Oklahoma Aug. 3, 2018) (applying *Grable* and finding that a federal question was not necessarily raised, such that it was unnecessary to consider the remaining factors and remanding case removed by an opioid manufacturer); Opinion and Order, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 Doc. 899 (N.D. Ohio Aug. 23, 2018) (concluding that "no federal issue [wa]s necessarily raised" in the State of Montana's lawsuit against an opioid manufacturer, and noting that the plaintiff was in no way asking the court to second guess the validity of the Food and Drug Administration's drug-labeling or decision-making) (Attached as Ex. H).  The same analysis applies to the pending motion. Because AmerisourceBergen may be found liable on the Plaintiffs' claims based on alternate theories that do not require violations of federal law, no federal issue is "necessarily raised" under the first prong of the *Grable* test.

The cases AmerisourceBergen does cite in support of removal are inapposite or, if anything, undermine its argument, and none of the cases are on point to the Plaintiff's claims. *See N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017), *as amended* (Apr. 18, 2017), as amended (May 3, 2017), *cert. denied sub nom. North Carolina v. Alcoa Power Generating, Inc.*, 138 S. Ct. 981, 200 L. Ed. 2d 248 (2018) (concluding that "questions of navigability for determining state riverbed title are governed by federal law") (internal quotation marks omitted); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014) (arbitration demand asserted four causes of action, each of which was based exclusively on the NASDAQ's duty to operate a fair and orderly market); *PNC Bank, N.A. v. PPL Elec. Utilities Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (stating in a brief footnote that a Declaratory Judgment Act claim raised a substantial federal question concerning the interpretation of section 501(c)(21) of the Internal Revenue Code); *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (plaintiff could not prevail on a claim without demonstrating a federal-law violation); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009) (same); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (complaint sought declaratory judgment that conduct violated a federal statute). Indeed, in *Virgin Islands Hous. Auth. v. Coastal Gen. Const. Servs. Corp.*, 27 F.3d 911 (3d Cir. 1994), the court found federal jurisdiction lacking, and rejected arguments that it should ignore the constraints on its subject matter jurisdiction in the name of judicial economy.  *Id.* at 916.[2]

**B.    Failure to Identify a Disputed Federal Issue, Much Less a "Substantial" One**

---

[2] In any event, here, the transfer to the MDL that AmerisourceBergen advocates would only undermine judicial economy.  As the State of New Mexico explained in its own remand papers, bouncing an a case between federal courts lacking subject matter jurisdiction would result only in needless delay and wasted judicial resources.  *See Balderas*, 2018 WL 2943246 at *3.

As an initial matter, *Grable* jurisdiction is reserved for almost pure questions of law, such as the interpretation of the IRS notice requirement at issue in that case. By contrast, "[n]o substantial federal issue will be found where a claim is 'fact-bound and situation-specific.'" *McKay v. City & Cnty. of San Francisco*, Nos. 16-cv-03561 NC, 16-cv-03564 NC, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (quoting *Empire HealthChoice*, 547 U.S. at 700). Here, it is hard to imagine a more fact-bound inquiry than AmerisourceBergen's dispute over whether it violated state and federal standards of care. And even if a federal question were necessarily presented in this matter, it would not give rise to removal as, "[t]he [Supreme] Court has cautioned that it takes more than a federal element to open the arising under door." Memorandum Opinion and Order, *State of West Virginia, et al.*, No. 2:17-cv-03555, Doc. 21 at 9 (internal quotation marks omitted).

Here, AmerisourceBergen effectively concedes that its duties under the federal CSA are undisputed, or at least, indisputable. Specifically, AmerisourceBergen admits that the description of its obligations under the CSA in the Complaint is the same as that set forth by the DEA and federal appellate precedent. *See* Notice of Removal ¶ 26. The decision in *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017), conclusively resolved any challenge to the interpretation of that law. Further, the requirements at issue have been well-established for some time which shows settled law in regards to the CSA. *See Southwood Pharmaceuticals, Inc.*, 72 Fed. Reg. 36,487-01 (July 3, 2007); *see also* 21 U.S.C. § 823; 21 C.F.R. 1301.74; Compl. ¶ 44 (noting that the CSA has been in force since 1970).

Turning to the third prong of the *Grable* analysis, courts have consistently found that the federal issue identified by AmerisourceBergen was not "substantial" enough to justify federal

16

jurisdiction.  As explained above, the absence of a federal cause of action strongly demonstrates

the absence of any substantial issue.  Moreover, as *Denn* explained:

> Federal issues must be significant "to the federal system as a whole." "[I]t is not
> enough that the federal issue be significant to the particular parties in the immediate
> suit." . . . The determination of whether Defendants violated the FCSA is not
> substantial to the government as a whole. Most importantly, the parties do not seek
> to interpret the FCSA such that it affects the manner in which the government
> operates. . . . Rather, the federal issues in this case will be substantial only to the
> parties. The outcome will not necessarily be dispositive of Plaintiff's claims and
> will not be controlling in any other case, as it will involve a factual determination
> relating to Defendants' conduct.

2018 WL 1942363, at *4 (quoting *Gunn v. Minton*, 568 U.S. 251, 260, 264 (2013)).  The *Balderas*

court concurred, 2018 WL 2943246, at *6, adding that the fact that "Plaintiff's claims will be 'fact-

bound and situation-specific' and do not readily present a pure issue of law which federal

adjudication could resolve 'once and for all,'" as well as "'the absence of a private right of action'

under the FCSA" were additional factors that weighed against a finding of substantiality. *Id.*

Likewise, the Southern District of West Virginia has twice found the absence of any substantial

federal question, reasoning that "[t]he federal courts have little interest in deciding cases involving

West Virginia's Uniform Controlled Substances Act and West Virginia's negligence and public

nuisance law," holding that this is the case "even if violation of a federal statute or standard is an

element of the claims."  Memorandum Opinion and Order, *State of West Virginia, et al. v.

McKesson Corporation*, No. 2:17-cv-03555, Doc. 21 at 14 (Feb. 15, 2018).

Thus, multiple United States District Courts have expressly and unanimously rejected, and

no court has agreed with, the same arguments AmerisourceBergen makes here - that federal

jurisdiction exists over lawsuits brought by governmental plaintiffs against opioid distributors that

include allegations that defendants were aware of but failed to comply with duties created by the

federal CSA but assert only claims arising under state law.  *Balderas,* 2018 WL 2943246; *Denn,*

17

2018 WL 1942363; *Anderson*, *supra,* Ex. A*;  Granite*, *supra*, Ex. D, *Uintah*, *supra,* Ex. C, *Weber*, *supra,* Ex. B; *Morrisey*, 2017 WL 357307.  And each ordered the case remanded to state court. *Id.* AmerisourceBergen's alleged violations of the federal CSA were insufficiently substantial to support federal jurisdiction under *Grable* in these actions, and are equally insufficient to support federal jurisdiction in this case.[3]

### C.   Removal of This and Similar Cases Would Disrupt the Federal State Balance Approved By Congress

Finally, removal of this and similar cases would undoubtedly "disrupt[] the federal-state balance approved by Congress." *See Grable & Sons,* 545 U.S. at 314.  As *Denn* explained:

> In this case, the federal issues are merely elements of state common law claims.  As stated in *Grable & Sons*, "if the [FCSA] standard without a federal cause of action could get a claim into federal court, so could any other federal standard without a federal cause of action." . . . Here, much like *Merrell Dow*, entertaining "garden variety" state law tort claims resting on federal statutory violations, such as negligence and fraud, could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331. Considering this potential threat to the structural division of labor between state and federal courts, in addition to the absence of a federal cause of action, it is "improbable that the Congress ... would have meant to welcome any state-law tort case implicating federal law" merely because the federal statutes create standards of care or elements to causes of action under state law. Thus, the Court cannot entertain Plaintiff's state law claims without disturbing the congressionally-approved division of labor between federal and state courts.

2018 WL 1942363, at *5 (quoting *Grable*, 545 U.S. at 319; citation omitted) (alteration in original); *See also Balderas*, 2018 WL 2943246, at *6 (quoting and following reasoning in *Denn*).

---

[3] AmerisourceBergen ignores this unbroken line of authority directly on point in favor of case-law that is not only inapposite, but much of which predates the Supreme Court's decision in *Gunn.* "While *Gunn* did not alter the four factors from *Grable* used to evaluate whether a federal interest was substantial, that decision emphasized the restricted circumstances in which a federal issue could be held as 'substantial.'" *McCann v. W. Chester Hosp., LLC*, 233 F. Supp. 3d 607, 610–12 (S.D. Ohio 2017); *accord* Opinion and Order, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 Doc. 899 (N.D. Ohio Aug. 23, 2018) (finding no substantial federal question presented and remanding action by the State of Montana).

And once again, the West Virginia court was in accord.  *See* Memorandum Opinion and Order, *State of West Virginia, et al. v. McKesson Corporation*, No. 2:17-cv-03555, Doc. 21 at 15 (Feb. 15, 2018) ("The federal courts have little interest in exercising jurisdiction over claims alleging violation of state statutory and common law—even where resolution of such claims might involve a "federal element". To do so would shift a significant number of garden-variety state law claims into a federal forum, thereby upsetting the congressionally intended division between state and federal courts.").  In a case such as this, where removal would invite any claims involving any reference to CSA duties, or duties under other federal statues, into federal courts across the country, accepting federal jurisdiction would surely "disturb the balance established between the federal and state judiciaries."  *Tofanelli v. Biogen Idec, Inc.,* No. CIV.A.07-11840-DPW, 2008 WL 3824775, at *4 (D. Mass. Aug. 5, 2008))

### V.     Mashali Defendants Were Properly Served and Therefore Consent for Removal is Required

AmerisourceBergen claims (upon information and belief) that Defendants Fathallah Mashali, and New England Wellness & Pain Management, P.C. a/k/a New England Pain Associates P.C. of Massachusetts and Rhode Island a/k/a Greystone Pain Management, Inc. a/k/a New England Pain Institute ("Mashali Defendants") were not yet served, in support of its argument that consent to removal from these Defendants was unnecessary.  *See* Notice of Removal ¶ 50. However, the Mashali Defendants were properly served on September 26, 2018 and October 5, 2018 at Devens Federal Medical Center.  *See* Exs. H and I.  Additionally, Mashali Defendants answered the complaint on October 17, 2018.  *See* Exhibit J.  Because the Mashali Defendants were properly served, their consent for removal is required.  *See Garside by Garside v. Osco Drug, Inc.,* 702 F. Supp. 19, 21 (D. Mass. 1988) ("[C]onsent from all defendants is required for removal. In cases involving multiple defendants, all who have been served with the complaint must join or

assent to the removal petition.").  AmerisourceBergen admits that it does not have the Mashali

Defendants' consent for removal.  *See* Notice of Removal ¶ 50. Therefore, AmerisourceBergen's

Notice of Removal is procedurally defective and improper.

AmerisourceBergen further argues that the Mashali Defendants' consent for removal is not

needed because they are "nominal parties."  *See* Notice of Removal ¶51.  A nominal party is

defined as one that does not have a stake in the litigation either prior or subsequent to removal.

*See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013).

Certainly, the Mashali Defendants are not "nominal parties.  They have a stake in and are important

to the litigation, as they significantly contributed to the opioid crisis in the City of Boston by

operating what was, in effect, a pill mill.  In just one month, Dr. Mashali prescribed over 1,000

oxycodone pills — more than some of the Commonwealth's largest hospitals.  See Compl. ¶43.

Dr. Mashali's patients waited up to 8 hours to see him and spoke about earning $70,000 per year

from selling his prescriptions.  *Id.* at 245.  According to a former employee of Dr. Mashali, the

doctor saw over 100 patients per day and only 5% of these patients had legitimate medical

conditions. *Id.* at 276.  Furthermore, he prescribed opioids to patients who suffered from addiction.

*Id.*  In March 2017, Dr. Mashali plead guilty in federal court to 44 counts of health care fraud,

conspiracy to commit mail fraud, and money laundering.  *Id.*

Additionally, in Defendant Mashali's Motion to Dismiss, his reasoning for dismissal was

that he was "indigent," had various medical conditions, and was unable to afford an attorney.  *See*

Ex. I at 1-2.   However, Defendant Mashali does not dispute any allegations of the complaint,

which include his over prescribing of opioids, prescribing opioids to patients who suffered from

addiction, and seeing over 100 patients per day.  See Compl ¶¶ 43, 276.  Thus, the Mashali

Defendants are not nominal parties as they directly contributed to the opioid crisis in Boston.  The

Mashali Defendants' actions, demonstrate that they are not nominal parties, and their consent for removal is required.

**VI.    The Plaintiffs Request Expedited Consideration of this Motion.**

AmerisourceBergen had no legitimate basis for removing this action to federal court. Its motives for doing so are readily transparent: AmerisourceBergen wants to tie up the Plaintiffs' lawsuit and avoid timely consideration of the Plaintiffs' claims.  The Plaintiffs' opioid crisis is far too serious for this case to meet such a fate.  The Plaintiffs therefore urge the Court to expedite its consideration of their Motion to Remand.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this case be remanded to the Suffolk County Superior Court.

Dated: October 30, 2018                    Respectfully submitted,

    /s/Robert Naumes_____
Robert T. Naumes, Sr., BBO # 367660
Christopher C, Naumes, BBO # 671701
**NAUMES LAW GROUP, LLC**
2 Center Plaza, Suite 620
Boston, MA  02108
Tel.: 617-227-8444
Fax: 617-227-1270
robert@naumeslaw.com
christopher@naumeslaw.com

/s/ Timothy J. Harrington
Timothy J. Harrington, Esq. BBO#652549
General Counsel
Boston Public Health Commission
Boston Emergency Medical Services
617-534-4322
tharrington@bphc.org

Eugene L. O'Flaherty* BBO#567653
*Pro Hac Vice to be submitted*
Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4034
eugene.oflaherty@boston.gov

Donald A. Migliori BBO# 567562
**MOTLEY RICE LLC**
28 Bridgeside Blvd
Mt. Pleasant, SC 29464
Tel: 843-216-9241
Fax: 843-216-9450
dmigliori@motleyrice.com

Robert J. McConnell BBO# 550625
Kate E. Menard BBO# 682087
**MOTLEY RICE LLC**
55 Cedar Street, Suite 100
Providence, RI 02903
Tel:  401-457-7700
Fax:  401-457-7708
bmcconnell@motleyrice.com
kmenard@motleyrice.com

Linda Singer*
Elizabeth Smith*
Sara Aguiñiga*
*Pro Hac Vice* to be submitted
**MOTLEY RICE LLC**
401 9th Street, NW
Suite 1001
Washington, DC 20004
Tel. 202-386-9626
Fax 202-386-9622
lsinger@motleyrice.com
Esmith@Motley Rice LLC
saguiniga@motleyrice.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30 day of October 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

  /s/Robert Naumes
Robert T. Naumes, Sr., BBO # 367660
**NAUMES LAW GROUP, LLC**
2 Center Plaza, Suite 620
Boston, MA  02108
Tel.: 617-227-8444
Fax: 617-227-1270
robert@naumeslaw.com